P.M. docket today. We'll call now case number 23-20570 Megalomedia, Inc. v. Philadelphia Indemnity Insurance Company. Mr. Flores. May it please the court. With appreciation for the special sitting, I'll make just one argument today. The argument I'll give you is the ambiguity argument based only on the eight corners documents. The briefs filed by my predecessor counsel make some other arguments about ambiguity that go beyond the eight corners. I'll leave those to the briefs, and they also have issue two about the tort claims. I'll leave those to the briefs as well. I'm going to take one shot, and it's on ambiguity. The argument is as follows. This phrase, reality shows, is ambiguous because the language of film has no well-established genre definitions. And we can approach this either from a theoretical perspective or a practical perspective. I'll give you the practical. Monday Night Football is not a reality show. The World Series is not a reality show. I think we all know that intuitively. I think we all agree about that. But no one can articulate why, because this kind of word doesn't actually have a definite— I have a lot of sympathy for this argument. I really do. And I don't know whether Monday Night Football is a reality show or not, but let's leave that to one side. Did—here's my concern, and I appreciate you narrowing your argument down. I'll be as equally blunt with you. Did you make this argument in opposing summary judgment? Because as I read the record, the argument that you made or someone made on your client's behalf with respect to ambiguity was different. It was that this exclusion clause actually meant not to exclude reality shows. So it wasn't really about the definition of reality show, although I have a great deal of sympathy for that argument as a concept. So is that a problem? That argument was not made below, but it's not a problem. And the reason it's not a problem is because of this Court's decision in Little. That's the case that's cited by the District Court. This is the classic case that talks about burdens. Remember here that they moved for summary judgment on their cause of action. So this is not us seeking summary judgment that says we are covered. It's their motion on their cause of action, a deck action, to prove that the exclusion applies. And so they always had the burden to establish that this exclusion applies, which means they have the burden of establishing the unambiguous meaning. That we think is a rule from Little. And so Little says if we had done nothing, they still have to carry their burden of pointing to the unambiguous part of the exclusion that would apply, and they didn't carry that here. But you still have to make arguments, right? You still have to preserve arguments below before you make them here. That's not what Little says, Your Honor. Little says regardless of what we do, if we file nothing, if they don't carry their burden of establishing— You can present arguments for the first time on appeal that you didn't present in District Court and we don't apply forfeiture? If they didn't carry their burden, Little says that's the result, that we can do nothing and summary judgment still shouldn't have been granted. We did make— We made a principle that we can affirm a summary judgment for any ground, but that ground had to be pressed below so that the District Court at least had an opportunity to rule on it. Well, it wasn't done here. I might take issue, Your Honor. I think the Court knows there are contexts where this Court will affirm a summary judgment for reasons that weren't presented below, if it's a pure question of law, if it's fair judgment. Really didn't even have to be argued below? I just thought that was a general principle of law. Is it not? No, Your Honor. I understand this Court to say that in some circumstances you can affirm for a pure question of law that wasn't presented below using principles of judicial administration. I don't think you would— Look, I mean, like I said, I have sympathy for the merits of the argument, but when I looked at your record sites for where this argument was raised, it wasn't, and you're telling me it wasn't. That's right, Your Honor. So you have the citations correct. So 1378 is where we say it's ambiguous, but not with the argument I present here. 1380 is our summary judgment below where we say we don't know why this language was included, and so I could make a really aggressive argument, but I think if you're talking about a fair presentation, it wasn't fairly and fully presented like it's— I mean, you're right, of course, they have to meet their burden to show, but they pointed to the phrase in the district court, so while it's unambiguous. Correct, and I think that doesn't suffice as a matter of law because— Why not? Well, because first of all, you have a term of art. It's literally a term of art. We're talking about movies as art, and we're trying to figure out what reality shows are. There's no definition of the term, and the key point here is there's no scaffolding. There's not even language above it or below it, to the left or the right, that talks about the subject of this art of filmmaking. There's no other word in this document that tells you this is how they use the term reality show or any term like it. It's a totally naked provision, and if you just look at the document, you'd have to have some coherent way of saying what's in and what's out. What about the—so don't you make an argument that this would render the insurance contract a nullity? That argument is made, Your Honor, that's correct. Are you making that argument still? I think that that's—I think the precise argument is that if they're correct, much of this insurance policy would be a nullity. I think it goes a little far to say that all of it— Yeah, that's—so thanks for being candid. I mean, it's—I'm also sympathetic to that argument because I'm thinking, all right, they sought general liability insurance for their shows. What do they get if reality shows are—because, I mean, is everything they do a reality show? I don't know. It depends on what you mean by reality, but yes, this kind of show, yes, that's all they do, and so that is a course of dealing argument that is made, but the court doesn't need to reach that because I think it's their burden as the movement to give you some actual definition. It's a reality show means X, and they still haven't done it. What if they show that—well, so this wasn't a summary judgment issue. This was an issue afterwards. What if the evidence showed that your client acted on the understanding that this was, in fact, a reality show so that the evidence I'm thinking of, the findings I'm thinking of are when Philadelphia asked for you to exclude production costs for reality shows and you excluded the production costs for this show in order for them to properly price the liability coverage? What about that? I think that's a point in their favor, but I think it's only a minor point in their favor. The better understanding that our side had during the negotiations is that this term in the exclusion meant one of two things. I can give you a generous one or maybe a more realistic one. The generous one is that there's a sort of scale, a spectrum of productions, and that what they meant here was really dangerous reality shows. There's reality shows and real reality shows, and this phrase is some sort of proxy for the really bad ones, and it's just unarticulated. I really do think that that's the case if you look at some of the evidence of what these people thought about. The evidence for not covering the ride-along shows supports that—sort of supports that hypothesis. What about this, that your client had other liabilities insurance specifically covering this show, right? I forget what that insurance is called, but it was a different kind of insurance. Correct, Your Honor. Wasn't that premised on the idea that this was a reality show? That was partly—I don't think we knew why that other insurance was covered in this case, but this is all beyond the eight corners argument that I had. Oh, I know. It comes up in the fact findings. Sure. That's right. That's right. But my argument is only on the summary judgment record, and you only need these two documents. I think the real challenge, the real use today is just have Philadelphia articulate some reason why Monday Night Football or anything is out, and we are anxious. Have them articulate a rule, because I don't think they can explain why whatever your hypothetical is for something that's not a reality show, right, why that falls outside, and we don't. Why do we have to prove that Monday Night Football is not a reality show? What about this show? They can pick any show and just say— Why is this show not a reality show? This show isn't a reality show because the petition, the underlying state court petition calls it a documentary. So you can— Why is it not a reality show? Well, it used that label, but it also on page 235 and 236, right, when they describe what the show is, they say that this show follows and documents. So if we're going to be close adherence to the rule, that's the argument. If you do get past the eight corners, you'll see that in this industry, there really aren't totally precise terms, but this is in fact just as much of a documentary as you might see in a lot of other contexts. And if you can't tell the difference, we win, right? It has elements— All right, but Megalomedia called this a reality TV show in the district court. They did, Your Honor. I'm looking at page one of the response to the summary judgment, right? Megalomedia, a reality TV production company, enters into this policy, refers specifically to My 600 Pound Life as a reality TV show, and makes the argument that the intent of the parties was for Philadelphia to ensure reality TV shows. Your argument today is the exact opposite of that argument. Now you're saying it's not covered, reality TV shows aren't covered, but that this is not a reality TV show. Isn't that literally the opposite of what you told the district court? It is somewhat opposite, Your Honor. Our position has always been the exclusion doesn't take us out. So I'll tell you what our position— You've always argued that you're covered. That's right. That's right. We say we're covered. But your theory below was reality TV shows are covered. Yeah, that's right. And this is a reality TV show. That's right. Today your argument is that reality TV shows are not covered, and that that's okay because this is not a reality TV show.  That's 180 degrees the opposite. How is that possibly preserved? So it's the same preservation answer that I gave to Judge Duncan, right? This argument wasn't— You mentioned Little? Yes. Was it the case? Did you cite that? We didn't. The district court did. You can see it on page 1757. That's an en banc decision of this court from 1994. I don't think— It wasn't in the briefs. No, Your Honor. It was not. So the district court used that as its standard, right? This is in the black letter recitation. And the district court says when it's their burden to prove their cause of action, they have to show all of the elements. And we as the non-movements can do nothing, can sit back and do nothing. Regardless of what we do, they have to carry the burden. It would be different if we were moving for summary judgment to get coverage and we were trying to establish an ambiguity. But as we understand Little, that's the rule there. Okay. I believe that the court has the argument. The only other thing I'll say is that this case really is a one-off and it's unprecedented. I've looked again today for any reported decision anywhere about an insurance contract with this term, and none exists. And so I think that should give the court some confidence that if this feels like an extraordinary case that's a little tricky to solve, that's okay. If you look at the record of the trial that happened here, you'll see, I think, the truth that the Philadelphia insurers were entering this market for the first time. They were shooting from the hip. They didn't really know what this policy meant at the time. The clause for the exclusion, I guess for lack of a better term, it wasn't in it originally, in the policy originally in 2010. Correct. And then it came up and it was inserted. It was placed in there in 2011. Correct. I don't know if it was simultaneous with or around the same time that they were talking about one of these cop shows. Correct. Both. So there were discussions both before the exclusion's appearance and after. And these are the emails where the Philadelphia folks say, some of your shows are okay, but others are not. And this is the unspoken principle that isn't in the document that somehow separates them. I think this is definitely in your favor in some sense. I just don't know if it's enough to overcome what the exclusion actually says. Fair enough. Well, that's the argument I have. I think the court understands it. If we can get an intelligible principle that they can point in the text, we think that's what they need to do to carry their burden. Thank you. Thank you. You've saved time for rebuttal. Mr. Melendi? May it please the court. Mr. Flores has limited a lot of what I wanted to say, so I apologize if I'm going to jump around a little bit. I'm going to jump right into it. The issue before the court is not, what does reality show mean? It's what, in the context of this pleading that calls it a reality show on page one, means when compared to the four corners of the policy that excludes any and all reality shows. The argument about whether Monday Night Football is a reality show or not is nice. It has nothing to do with the case before this court. What is the definition of a reality show? I think the real question is, what does any and all reality show mean when looked through the lens of the pleading? It's just like this court has held in Gold Coast vs. Travelers, the most recent one last year, that a phrase can be unambiguous in one situation and ambiguous in another. Counsel, the schedule excludes the production of filming or distribution of pornographic materials, period. Then in a fragment with no subject, capital E excludes any slash all reality shows. What does that mean? What it means is it excludes any and all shows that are reality based, and that's what the exclusion means, and that's what the intent was throughout the line. Any and all shows that are reality based, so it excludes Monday Night Football. I don't know whether it excludes Monday Night Football. We'd have to look at what the pleading says because we have to take those allegations as true. I think, counsel, your client wrote the policy. Yes. Your client wrote the following fragment, excludes any all reality shows. It is your burden at summary judgment to prove as a matter of law what that means, yes or no? It is my burden to prove as a matter of law what the policy means, means what it says, and it's clear and unambiguous, yes sir. And so it's clear and unambiguous that excludes any and all reality shows means what you just told me was reality based. That is correct, your honor. So any show that is reality based, would it exclude Jimmy Fallon? Yes or no? Your honor, I have a hard time answering that question without a pleading, but I... If you can't answer it, you're going to lose. Well, your honor, I'm sorry. Help me understand, maybe a better way of saying it is, how could you possibly win the case if you can't answer my questions yes or no? Does it exclude Jimmy Fallon? On the assumption that Mr. Fallon is based in reality, yes, it would exclude it because even when looking at the Webster's definition, which they cite in their own brief of what encompasses reality shows, he falls within that genre. Does it exclude Fox News? Without getting into whether or not it is based in reality or not, I would think it would, yes, it would exclude news shows as well because they are reality based programming. So would it exclude anything beyond pure fictional production, anything, game shows? What about Jeopardy? I believe that based upon the definition of what a reality show is, the general liability bodily injury covered part, that exclusion would apply on those facts. So is there any show that Megalomedia made that was not excluded? I don't know the answer to that, your honor, because we did not underwrite this on a show by show basis. I'm sorry, go ahead. No, go ahead. Yeah, please. No, look, that's my novelty question. It's like you're writing a policy for a customer, they're a film production company, do they do anything beyond reality TV, reality shows in your view? They allege in their, sorry, they make reference throughout to their other shows that are not reality based. At trial, they talked about how all of their shows are reality based. The other thing to remember too is this exclusion, and this goes to Judge Duncan's nullity argument, which is really an illusory coverage argument, this exclusion only applies to bodily injury on commercial general liability. If the plaintiffs on My 600-lb Life allege they were injured in a car accident, this policy would cover it, even if it's a reality show. If a camera fell, if their camera fell, the film adaptation coverage part would provide coverage for that. This exclusion, and the judge correctly noted this in the findings of the act. You lost me. It said it excludes the production of, filming, or distribution of pornographic materials, excludes any all reality shows, so you're saying the production of, filming of, or distribution of reality shows is covered, it's not excluded? That exclusion only applies to coverage A, which is bodily injury and property damage of the commercial general liability coverage part. It does not apply to auto, personal injury. It does not apply to fraud claims. It does not apply to the coverage they buy for their buildings. It does not apply to the coverage for their cameras. That's the distinction that when you're talking about the other show in June of 2011, Cartel City, they talked about, you know, you're riding around with cops, there's equipment hanging on to cars, you know, this is just inherently dangerous. We're not providing any coverage for that show. Can you give me an example, can we just zoom out for a second?  The hypotheticals in this case are obviously entertaining, but can we just zoom out for a minute and talk to me just generally about the eight corners rule that your friend on the other side has brought to us? Sure. Can you cite to me a case that has ever been decided by any court in the United States where an insurance company has won an eight corners argument with zero definition for a fragmentary exclusion? Like, I have never in my life seen an insurance policy that where the exclusion, the operative exclusion is not even a sentence, much less does it have any definitional content at all, not one word. The United States Supreme Court in about, I'm sorry, the Texas Supreme Court in about 1992 or three, in a case called TAC, which is Texas Association of Counties versus Matagorda County, that entire case turned on whether the exclusion said claims arising out of jail. Out of, I'm sorry, out of jail. And it was an exclusion about, and I know this because one of my partners was the briefing attorney and associate on the case. Do you mean to accept all of the premises in the law? No, I do not, but you know, I have, I have an answer, so I'm going to try to give it. So, for example, the idea that it's fragmentary, well, I mean, I'm reading it in context. It says description of designated ongoing operations excludes, you know, the production of filming of pornography, excludes any all reality shows. I mean, it means to exclude them, right? That is correct, and that's. It doesn't mean to include them. No, it's the exact opposite of what they. The argument that they made below. Correct. And I. Include them. It excludes them. That's correct. I'm assuming you're not accepting the premise that the phrase reality shows is this sort of Schrodinger's phrase that is bereft of all meaning and that collapses into a vacuum the moment I read it, right? No, it does not. And I don't believe that it can be read in a vacuum in any way, and I believe Texas law says it can't be. And I think that's exactly why, if this, if that exclusion that you, if the way you want to read it, Judge Oldham, as a fragment were to apply to the entirety of all the coverage purchased, I think the illusory coverage argument would be closer to bear, but that's not what the facts played out, and that's not an argument that anybody has raised. And I think a big, a big exclusion is that it's your burden to show the exclusion, right? That's why it matters. It's not because it's just some random provision in the contract. You as the insurance company, you wrote it, contra preferendum and the presumption of coverage and the presumption of the duty to defend, you have to show as a matter of law that this is, that all of this is excluded somehow, and I don't understand how you can do it when there's no content to it. I don't, one, I don't believe that contra preferendum applies to this under Texas law. I don't believe that that's the state of the law right now. I don't have a case in front of me that says that because that's not an issue they've raised, but I believe that's the state of the law. Two, the, while it is absolutely our burden to show there is no duty to defend as a matter of law, and it's our burden to show that it's clear and unambiguous, we don't have to disprove an ambiguity that they didn't raise, okay? That is their burden to raise an ambiguity. It's an affirmative defense. It's, you know, it's not something that they raised. I think that Mr. Flores has owned up to that's not, wasn't raised at the trial court. And the phrase means what it says. I've been trying to rack my brain as a way to not make the pornography analogy from law school, but, you know, it is what it is, and it's a pleading that says it's a reality show. They admit they're a reality TV producer, and they argued that no, this is backwards, right? This was an, the reality shows was an exception to the exclusion for bodily injury arising out of reality shows. And so, when faced with that, the record at summary judgment before the court was, everybody is not disputing that this is a reality show. It's clear and unambiguous based upon what's in front of me. And that's what she ruled on. And I don't believe they've preserved any challenge to that language. And I disagree with the, with Mr. Flores' assertion that we have to affirmatively disprove an ambiguity, that it's ambiguous when it's something they don't raise. Well, I guess what, the way I heard Mr. Flores to say it, and I'm not sure he's wrong about this. Because, I mean, I would think, I was thinking of the Supreme Court's decision in Matsushita, which is one of the triumvirate summary judgment cases from 1986. And the court says that where you have the burden at proof at trial, which you obviously do, right? Yes, sir. And you are the movement, they don't have to do anything, right? You have to, when you come in, you have to show your entitlement as a matter of law. And Mr. Flores or his predecessor counsel, I don't know who was litigating it at the time, could have just stood up and said shrugging emoji to the judge. And it would have been exactly the same as we are today. So I'm not sure why it matters what they said or didn't say. I don't believe that that is what the standard is. I believe that this court's case in Abanias versus Texas A&M Kingsville last year made it clear that you have to put something before the district court sufficient for the court to rule on it, for it not to be waived. And I believe that that applies here. I don't believe that when an ambiguity isn't raised, and we contend it's clear and unambiguous, and the judge makes a determination that it's clear and unambiguous, that they can challenge that for the first time on appeal. I mean, let me just summarize what I think went on below. This is a very abbreviated summary. You filed a motion for summary judgment and said here's the policy, it excludes reality shows. Here's the complaint, it says it's a reality show that hurt me. And you ask the other side, is this a reality show? And they said, yeah, it's a reality show. But the policy actually includes reality shows, it doesn't exclude them. Summary judgment granted, is that what happened? That, at the summary judgment stage, that's what happened, and they had ample opportunity when to move the court to reconsider that. Throughout the trial court, we had a trial on their fraud based counterclaims, where the entirety of the remainder of the case that we had a bench trial on was, did you misrepresent the terms of this policy and mislead us through inducement or omission to believe that our reality shows would be in fact covered, and the court held that they did not carry their burden to show that. And I know that Mr. Flores isn't raising that argument here today, because I think that the findings of fact made clear, and the clear record shows that everybody throughout the entirety of this understood my 600 pound life to be a reality show. And that's what the eight corners rule requires, you have to compare the policy to the pleadings. It's just akin to, in the employment context, there's a lot of cases you guys probably see even more than I do, arguing about what is the definition of employee mean in Texas, right? And the one that always goes back to in my mind is Nautilus versus Zamora, and it's about from 1999, where when you plead that someone's an employee in course and scope, even without looking at whether or not the policy has a separate definition, the courts will look, it's alleged that they're an employee within course and scope. Exclusion E on the standard policy language excludes it, and so it's excluded. If people want to redefine employee, let's look at what that definition is. Here, when you have an undefined term, which is what any and all reality shows is absolutely an undefined term. You look at the plain and common ordinary accepted meaning. And the court looked at the common ordinary accepted meaning and said on these facts that it applies to the claims raised here. Just as in Travelers versus Gold Coast, you could have something be ambiguous in one scenario. We could get back into the hypothetical of whether Jimmy Fallon or Fox News is reality or neither of them are. That's not before the court. What's before the court is the phrase any and all reality shows when compared to the four corners of the Bonner complaint, something that applies to eliminate cover for bodily injury. What about the $3 million of production costs that were undisputedly for reality shows? What were those for? The $3 million in production costs they recommended, they represented to us, were not for reality shows. And what he's getting at is in 2015 and 2016, after being reminded that no, the general liability policy portion does not cover reality shows, give us your gross production costs without reality shows. This was because Philadelphia didn't want to charge them premium for something that was excluded. They took that amount of $16 million down to $3 million and said, no, no, no, only charge us on $3 million. And- Production costs for 600 pound life out. Yes. It wouldn't be charged. Correct. Correct. And they did that, and they did, and the judge made a specific finding of fact on it. And they're around 48 or 49 or 50 in his findings of fact. The Philadelphia representatives said, give us your gross production cost excluding reality shows for general liability. And the undisputed testimony by the megalomedia representatives was, they made the decision to remove my 600 pound life's cost from that 16 million to get it down to three. We didn't say, give us your gross production cost, less my 600 pound life. We said, give us your gross production cost, less your reality TV shows. And they took it out. The same thing happened in 2015 and 2016. The same thing happened with- What's in the three million? Other shows that they're working on, we don't know because we don't ask questions about specific shows. So you're underwriting, or I'm sorry, you're insuring bodily injury claims for shows that you don't know about. Yes. This isn't project specific or show specific coverage. And to get to one of your questions for Mr. Flores, the other general liability policies that megalomedia purchased were for specific shows by show name for general liability. They specifically bought policies and it's in the record for my 600 pound life season four, my 600 pound life season five. Our policy is a package policy that covers other productions that they're not specifically listed. But it's undisputed that they are making $3 million worth of non-reality shows. That is what they represented to us. They did not dispute that. You have not disputed it. We have not disputed it. So it's an undisputed fact that they are doing $3 million worth of non-reality show production. That's what their representation to us was, and we do not dispute their representation. When you asked them, when your client asked them for certificates of insurance with respect to specific shows, what was the purpose of that? The purpose of that was, and the record reflects, we told them we need certificates of insurance showing you have general liability for your reality shows somewhere else. Because we're not covering it. And each year we asked them, the question was always, we need your certificates for your reality shows. And they sent My 600-lb Life every time. It was their decision to make it My 600-lb Life. They're calling it one of their own reality shows. Not just in the pleadings. They're getting insurance for that show through some other policy. Correct. They're not buying it from us. They're not buying it. They're buying it through a program that is run by the Discovery Channel where the show's aired. And the Discovery Channel forces them to buy this specific coverage. On the forfeiture issue, opposing counsel invoked our en banc decision in Little. Do you care to respond to that? Your Honor, I do not believe that we have a duty, that it's our burden to show that something is not ambiguous. Our burden is to show that it's unambiguous and applies as written. And the court did just that. And I think that we carried our burden to show it was unambiguous at the time. And they didn't join that issue. In fact, they agreed that what they are saying now is the ambiguity. They agreed at that time. And I don't believe it's a judicial admission. I think opposing counsel is very, to their credit, has very candidly admitted that this was not their theory at all. It was the opposite. Their point is it doesn't matter. That they don't have any duty to preserve because they were bottom sought on MSJ. And that Little covers this and makes clear that they have no duty to preserve and therefore didn't forfeit. That's my question to you, is do you agree that Little excused their- I disagree. It's clear there's no forfeiture. I disagree. I think that with your most recent decision in Avanias versus A&M Kingsville, which was last year. And going back to the ones I have in my brief are Keelan versus Majesco, which is 2005. Going back to citing New York Life versus Brown from 1996, where this court held an argument must be raised, quote, to such a degree that the district court has an opportunity to rule on it. And I think that they have to, in response to an argument that says it's clear and unambiguous as a matter of law. In fact, they joined in agreement on the terms we're fighting here about today. They have a duty to raise the ambiguity argument. It's their defense. They have to raise it at that time. If the court doesn't have any further questions, I'll yield my time. Thank you. Thank you, Mr. Flores. You're five minutes. I'm going to go ahead and ask you right away, on Little case, you mentioned you didn't brief it, but it's in the, excuse me, it's in the district court opinion. So in fairness to me, I have not had a chance to master Little. Can you point to me where in Little it says that you didn't forfeit? Sure. In postures like this? So we're looking at 1757 of the record? I'm sorry, I'm talking about the Little case. Yes, the quote is on page 1750. This is the district court summary judgment. The district court quotes Little. So I can read it to you. Oh, I see. You want to look at the district court, that's fine. The district court, in this case, when it's reciting the standard, cites a Fifth Circuit case that itself quotes Little. But just to be clear, that's about the standard that the district court's applying with respect to summary judgment motions. I thought you were saying that it's relevant to the question of forfeiture on appeal. It is. So the question is whether the district court committed an error. And the district court here committed the error because they didn't carry their burden. And that error exists regardless of what we, the non-movement, filed. So Little stands for that proposition, that it is error to grant that motion regardless of what the non-movement files. That's the phrase, regardless of what we filed. That's the exact language from Little. And so our understanding is the error occurred, right? We didn't have to preserve it because it occurs regardless of what we say. And so we can attack it on appeal. That's our understanding of the rule from Little. The only other citation I have is the reply that we've given the court in this court on page five and six. We'll point to the pleadings below, and my friend on the other side says, this is a reality show because the pleadings in the state court action called it a reality show. But we've given you the citations from those same pleadings that say, in fact, underneath the labels, this is more like a documentary, or at least arguably so. The court has those citations already, but they're on five and six of the reply. And that's all that I have to submit now. What are you, when you subtracted the production costs for reality shows in response to the insurance company's inquiry, you left three million. What is being produced with the three million? The record doesn't tell us that. I don't think that's in the trial record, and it's definitely not in the summary judgment record. So I want to honor my- Sure, logic would say it's for not reality shows. Mm-hm. If the court has no further questions, we'll submit those. Yes? To understand your little point, I guess your theory, as best as I can truly construe it, is we can ignore your opposition completely, because their motion was essentially defective on its face. Yes, and that relies on the premise that the defect is part of their burden. And so the way to conceptualize this is they have to tell you what the policy means. We have rules of construction about how to define the policy meaning, right? But that is always their burden, to show what the exclusion means. Their burden is to say the exclusion unambiguously covers us, because all exclusions have to be unambiguous. Why is their motion facially deficient? I think Judge Duncan already kind of went through this, but just to put a pin on this is, they say that reality shows are excluded as a matter of contract interpretation. And they assert the fact that this is a reality TV show. On its face, that is a complete summary judgment motion. And now we turn to the opposition to see what the dispute is. So I think they necessarily have to tell you that that phrase, reality shows, has a clear meaning, and it doesn't. Okay, I mean, it has some meaning. That's it. And one might say it, whatever it means at the margins, it might include my 600 pound life, but. Well, it might, but that means we win, if it's only might. And still today, we had no articulated reason of why it's included, other than it's a reality show. And that's the whole problem. This is why Texas law imposes the burden, is because courts and litigants can't figure it out. It's true, the sort of course of dealing has people's heads spinning. It's true that below our side didn't know what to make of it, and I think that is a point in our favor and not theirs. I guess the trouble I have, though, is they're asserting a fact, as I'm sort of playing along with this approach. They're asserting in the top side brief, the fact, their fact, that this is a reality TV show. We look to the opposition to counter that fact, and not only do you not counter it, you concede it. Well, the face of the petition below, the face of the papers that they supplied, creates the fact issue. What they put in front of the court has a state court petition that says, maybe it's a reality show, maybe it's a documentary. Okay. Thank you, Ken. Thank you. We have your argument and the case is submitted. Court is adjourned.